UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20821-CIV-DAMIAN/D'ANGELO

FREDERICO ABREU,

       Petitioner,

vs.

ZOELLE RIVERA, in her official capacity as
ASSISTANT FIELD OFFICER DIRECTOR
KROME PROCESSING CENTER, et al.,

       Respondents.

_____/

## REPORT AND RECOMMENDATION DISMISSING
## PETITIONER'S VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court on Petitioner Frederico Abreu's Verified Petition for a Writ of Habeas Corpus filed on February 21, 2025 (DE 1).[1] On March 4, 2025, the Court issued an Order to Show Cause to Respondents Zoelle Rivera, in her official capacity as Assistant Field Officer Director Krome Processing Center, Pam Bondi, in her official capacity as Attorney General, Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, and Caleb Vitello, in his official capacity as Director of United States Immigration and Customs Enforcement, as to why the Petition should not be granted (DE 25).[2] On March 20, 2025,

---

[1] On February 28, 2025, the case was referred to the undersigned Magistrate Judge for all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters (DE 24).

[2] The Government contends, and Petitioner does not dispute, that Charles Parra, Assistant Field Office Director, Federal Detention Center is Petitioner's immediate custodian. "In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Therefore, it is respectfully recommended that pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court be directed to substitute Charles Parra in his official capacity as Assistant

Respondents filed their response to the Order to Show Cause (DE 27), and Petitioner filed his reply on March 27, 2025 (DE 28).  Petitioner filed his Motion to Supplement Reply to Response to Order to Show Cause with Immigration Court Transcript on April 6, 2025 (DE 29), and Respondents did not file a response.  Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Petitioner's Motion to Supplement be **GRANTED** and Petitioner's Verified Petition for a Writ of Habeas Corpus be **DISMISSED WITHOUT PREJUDICE**.

## I.    FACTUAL BACKGROUND

Petitioner is a citizen of Brazil, and in March 2006, he obtained legal permanent residency in the United States (DE 1 ¶ 12).  Since 2006, Petitioner has been convicted in two cases of drug-related offenses – in California state court in 2013 and in the United States District Court for the Southern District of Florida in 2016 (DE 27-3, DE 27-11).  On February 8, 2025, United States Immigration and Customs Enforcement ("ICE") officers took Petitioner into custody for violations of the Immigration and Nationality Act ("INA"), Title 8, United States Code, Section 1101, *et seq.* (DE 27-2 ¶ 29; DE 27-16; DE 27-17; DE 27-18).[3]  Shortly thereafter, Petitioner was transferred from the Krome Detention Center to the Federal Detention Center ("FDC") in Miami, where he is

---

Field Office Director, Federal Detention Center as the Respondent in this case.  All other Respondents should be **DISMISSED** from this action.

[3] The Parties dispute the circumstances of Petitioner's arrest.  Petitioner contends he was arrested at his house, without a warrant, in front of his family, while grieving his spouse's passing (DE 1 at 1, DE 28 at 6).  Respondents claim Petitioner was arrested during a vehicle stop (DE 27 at 4).  For purposes of considering the claims in the Petition, the undersigned relies on Petitioner's recitation of the facts surrounding his arrest.

currently detained (DE 27-2 ¶ 26).[4]  Petitioner filed the instant writ of habeas corpus, seeking release from detention or release through a bond in his immigration proceedings (DE 1 ¶ 26).

Following his admission to the United States, on August 29, 2013, Petitioner was convicted in the Superior Court of California for the County of Los Angeles of three counts of possession of a controlled substance with intent to sell and forgery (DE 27-2 ¶ 8; DE 27-3).  Petitioner was sentenced to 226 days' confinement and three years' probation (DE 27-2 ¶ 9).  On September 13, 2013, ICE took Petitioner into custody, and the Department of Homeland Security ("DHS") subsequently issued a Notice to Appear, charging Petitioner with removability as an alien convicted of an aggravated felony and a controlled substance offense under Sections 237(a)(2)(A)(iii) and (a)(2)(B)(i) of the INA (DE 28-1).[5]  Petitioner was ordered removed by an immigration judge on February 28, 2014 (DE 27-2 ¶ 14).  That order, however, was remanded by the Board of Immigration Appeals following Petitioner's appeal (DE 27-2 ¶ 17; DE 27-7; DE 27-8).  During the removal proceedings, on March 31, 2014, Petitioner and DHS stipulated to a $20,000 bond, which allowed Petitioner to be released from ICE custody on April 3, 2014 (DE 27-2 ¶¶ 15-16; DE 27-9).

While on bond, Petitioner was arrested and prosecuted in federal court on additional narcotics charges.  Specifically, on August 24, 2016, Petitioner was convicted in the United States District Court for the Southern District of Florida in Case No. 16-CR-20171 of conspiracy to

---

[4] The Parties dispute whether Petitioner was moved to FDC on February 11 or February 12, 2025 (*compare* DE 1 ¶ 1 *with* DE 27 at 4).

[5] Petitioner contends that the 2013 Notice to Appear submitted by Respondents and the Declaration of Officer Porrata are incomplete, because Respondent's Notice to Appear only charges Petitioner with removability pursuant to Section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (*compare* DE 27-1; DE 27-2 ¶ 11 *with* DE 28-1).  Respondents have not contested the authenticity of the 2013 Notice to Appear submitted by Petitioner.  As stated *infra*, in considering the claims in the Petition, the undersigned relies on the 2013 Notice to Appear provided by Petitioner.

possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841 (DE 27-2 ¶ 19; DE 27-11). Petitioner was sentenced to 120 months' imprisonment, which was later reduced to 48 months' imprisonment (DE 27-2 ¶¶ 19-20; DE 27-12). Petitioner's immigration case was administratively closed while he served his federal sentence (DE 27-2 ¶ 21; DE 27-13). In October 2020, Petitioner's immigration bond was canceled (DE 27-2 ¶ 22; DE 27-14). Petitioner was released from federal custody on December 23, 2020 and transferred to ICE's custody (DE 27-2 ¶¶ 23-24; DE 27-15). Due to the COVID-19 pandemic, ICE released Petitioner from custody subject to reporting requirements (DE 27-2 ¶ 25).

DHS moved to re-calendar Petitioner's immigration case in March 2022 (*id.* ¶ 26). Petitioner appeared before the immigration judge on September 1, 2022 and June 1, 2023 (*id.* ¶¶ 27-28). At the June 1, 2023 merits hearing, Petitioner requested a continuance, which was granted (*id.* ¶ 28). On February 8, 2025, ICE officers arrested Petitioner for violations of the INA (*id.* ¶ 29; DE 27-16; DE 27-17; DE 27-18). On February 21, 2025, Petitioner filed his Verified Petition for a Writ of Habeas Corpus (DE 1).

In addition to setting forth the history of his immigration proceedings, Petitioner also states that he is HIV positive and "suffers from a heart condition, respiratory complications, and consistent seizures" (*id.* at 1). According to Petitioner, since he was detained, he has been denied access to his life saving medication, only receiving his HIV medication (*id.*). Petitioner claims that he has not received any care for his heart condition, respiratory complications, and seizures (*id.* at 2). Upon his arrival at Krome Detention Center, Petitioner slept on the floor, because there were not enough beds (*id.*). Petitioner further claims that when he was transferred to FDC in Miami, he was not able to shower or access clean clothes, toiletries, or medicine (*id.*). Petitioner maintains that his last shower was on February 8, 2025, and the lack of basic hygiene has resulted

in him contracting an illness (*id.*).  As if Petitioner's circumstances could not be more unfortunate, Petitioner was detained four days after his spouse died of a heart attack (*id.*).  Due to Petitioner's detention, his spouse's body is held at a funeral home and cannot be released to anyone other than Petitioner (*id.*).[6]

After his arrest, DHS moved to change the venue of Petitioner's immigration case from the Miami Immigration Court to Krome's detained docket on February 12, 2025 (DE 27-2 ¶ 31).[7] Fifteen days later, the immigration court granted the change of venue (*id.* ¶ 32; DE 27-19).  On March 11, 2025, Petitioner filed a motion for a bond re-determination in the immigration court (*id.* ¶ 33; DE 27-20).  DHS issued another Notice to Appear on March 13, 2025, again charging Petitioner with removability as an alien convicted of an aggravated felony and a controlled substance violation (DE 27-2 ¶ 34; DE 27-21).  On March 20, 2025, the immigration court held a bond hearing based on Petitioner's request (DE 27 at 5; DE 28 at 7; DE 27-24).[8]  The immigration judge denied Petitioner's request for a bond, finding Petitioner's detention was mandatory under the INA (DE 27-24).

---

[6] To the extent Petitioner tangentially challenges his conditions of confinement, habeas corpus is not the proper avenue of relief.  *See Mackey v. United States*, No. 21-13094, 2022 WL 17830252, at *2 (11th Cir. Dec. 21, 2022) ("Claims challenging the fact or duration of confinement fall within the core of habeas corpus, while claims challenging the conditions of confinement fall outside that core and may be brought pursuant to 42 U.S.C. § 1983." (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004))); *Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement.").

[7] Officer Porrata's Declaration states that DHS moved for the change in venue; however, the order of the immigration judge reflects that Petitioner moved for the change in venue (*compare* DE 27-2 ¶ 31 *with* DE 27-19).

[8] In their briefing, the Parties state that the bond hearing was held on March 30, 2025 (DE 27 at 5; DE 28 at 7).  Yet, the records from the immigration proceedings demonstrate that the bond hearing was held on March 20, 2025 (DE 27-24).

## II.   <u>LEGAL STANDARD</u>

Section 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a) (2008). A court may issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3). A Petition for a Writ of Habeas Corpus is the proper procedure for a person to challenge their detention under Section 1226 of the INA, because "Section 1226(e) contains no explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   <u>DISCUSSION</u>

### A.  Petitioner's Motion to Supplement the Record

On April 6, 2025, Petitioner filed his Motion to Supplement the Record (DE 29). Petitioner explains that in the response to his Petition, Respondents attached a different and incomplete Notice to Appear from 2013 and that during the April 1, 2025 master hearing, the immigration judge determined that the allegations in the 2025 Notice to Appear are the same as those in the 2013 Notice to Appear (*id.* at 2). According to Petitioner, "[a] failure to include this evidence in the record may lead to an incomplete consideration of the facts" (*id.*). Respondents did not oppose the Motion to Supplement the Record, and the deadline to do so has passed.

"It is within this Court's discretion to permit [a] [p]laintiff to supplement the record." *Wilssens v. Medtronic, Inc.*, No. 09-CIV-60792, 2009 WL 9151079, at *4 (S.D. Fla. July 23, 2009); *see also QBE Ins. Corp. v. Jorda Enters.*, Inc., No. 10-CIV-21107, 2012 WL 12844302, at *2 (S.D. Fla. Aug. 6, 2012) (finding it within the Court's discretion to allow a party to supplement the record). Having considered the Petitioner's arguments and the absence of an opposition from Respondents, in the sound discretion of the Court, there is good cause to allow Petitioner to present

additional facts and information in support of his Petition.   Therefore, it is respectfully recommended that Petitioner's Motion to Supplement the Record be **GRANTED**.

### B.  Petitioner's Request for a Writ of Habeas Corpus

Petitioner argues that his detention is unlawful and that he "is entitled to release from custody pursuant the immigration bond in the amount of $20,000 granted by the Immigration Court in Los Angeles, California on March 31, 2014" (DE 1 ¶ 26).  Petitioner contends that his detention "has become unreasonably prolonged, and he is entitled to release," as his detention allegedly violates the INA and the Fifth Amendment's Due Process Clause (*id.* ¶¶ 26-45).  However, in his reply to Respondents' response to the Order to Show Cause, Petitioner acknowledged that on March 20, 2025, "the Immigration Judge held a bond hearing and denied bond, finding that Mr. Abreu was subject to mandatory detention . . . ." (DE 28 at 7).  Petitioner argues that at the March 20, 2025 bond hearing, the immigration judge recognized that DHS could move to have Petitioner released on bond, but DHS has not done so (*id.* at 9).

Respondents argue that Petitioner's detention is mandatory pursuant to Title 8, United States Code, Section 1226(c), which "provides that aliens who have been charged with removability on certain grounds must be detained during removal proceedings" (DE 27 at 5).  Respondents further argue that the United States Supreme Court has previously upheld the constitutionality of mandatory detention under Section 1226(c) and determined that nothing in the statute requires a bond hearing for an alien who has been detained for less than six-months (DE 27 at 6-8).  Moreover, Respondents point out that even with his criminal convictions, Petitioner has been detained for approximately three months and had a recent bond hearing on March 20, 2025, in response to his request for a bond re-determination (*id.* at 13).

### i.     The Statutory Framework under the INA

The INA sets forth a framework for whether an alien shall be detained or released while removal proceedings are pending. In particular, the INA distinguishes between aliens who have previously been convicted of certain crimes and those who have not.  Section 1226(a) provides that for those aliens, *who have not been convicted of certain crimes* specified in the INA, the alien may be detained or released on a bond or conditional parole.  8 U.S.C. § 1226(a) (2025).  Section 1226(b) provides that *at any time*, an alien who has been released on a bond or parole may be subject to revocation and detained.  *Id.* § 1226(b).  For those aliens, *who have been convicted of certain crimes* specified in the INA, Section 1226(c) mandates detention during removal proceedings.  Specifically, Section 1226(c) provides, "[t]he Attorney General *shall* take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."  *Id.* § 1226(c)(1)(B) (emphasis added).  Among the offenses that trigger mandatory custody are controlled substances offenses under Section 1227(B)(i):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C § 1227(B)(i) (2008).

When an alien is detained under Section 1226(c), the INA only permits release in certain delineated circumstances:

> The Attorney General may release an alien . . . only if the Attorney General decides . . . that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien

8

> satisfies the Attorney General that the alien will not pose a danger to the safety of
> other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C § 1226(c)(4).  Accordingly, "§ 1226(c) mandates detention of any alien falling within its

scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien

is released for witness-protection purposes." *Jennings v. Rodriguez*, 583 U.S. 281, 305-06 (2018).

### ii.    Cases Interpreting Section 1226(c) of the INA

The Supreme Court first analyzed the constitutionality of Section 1226(c) in *Demore v.*

*Kim*, 538 U.S. 510 (2003).  There, the respondent, a citizen of South Korea who later became a

lawful permanent resident in the United States, was convicted of first-degree burglary and petty

theft with priors.  *Id.* at 513.  The respondent charged him with removal and detained him for

approximately six months.  *Id.* at 513.  In upholding the facial constitutionality of mandatory

detention pending a final order of removal, the Supreme Court explained that as part of Congress's

broad power over naturalization and immigration, it "regularly makes rules that would be

unacceptable if applied to citizens."  *Id.* at 521 (citation omitted and quotation omitted).  The

Supreme Court rationalized that even though the Fifth Amendment entitles aliens to due process

during removal proceedings, mandatory detention "necessarily serves the purpose of preventing

deportable criminal aliens from fleeing prior to or during their removal proceedings" and has "a

definite termination point . . . ."  *Id.* at 528-29.  As a result, the Supreme Court held, "[d]etention

during removal proceedings is a constitutionally permissible part of that process."  *Id.* at 531.

In *Jennings v. Rodriguez*, the Supreme Court considered whether Section 1226(c) must be

read to contain implicit temporal limitations on the length of mandated detention while removal

proceedings are pending.  583 U.S. at 286.  In that case, the respondent, a lawful permanent

resident in the United States who was convicted of drug charges and grand theft of a vehicle, was

detained under Section 1226(c) during his removal proceedings.  *Id.* at 289-90.  The respondent

filed a habeas petition, arguing that he was entitled to periodic bond hearings to determine if his continued detention was justified. *Id.* at 290. The Supreme Court rejected the reasoning of the lower courts that relied on the canon of constitutional avoidance to hold Section 1226(c) necessarily contained an implicit temporal limitation on the length of mandatory detention without a bond hearing. *Id.* at 296. Rather, the Supreme Court found that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions." *Id.* at 304 (internal citation omitted). The Supreme Court further held "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* at 305-06. In reaching this conclusion, the Supreme Court explained that the lower courts "misapplied the canon [of constitutional avoidance]" based on "implausible" interpretations of Section 1226(c) and "erroneously concluded that periodic bond hearings are required" by the statute.[9] *Id.* at 296, 312.

The United States Court of Appeals for the Eleventh Circuit discussed mandatory detention under Section 1226(c) of the INA in *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) ("*Sopo I*"), *vacated by*, 890 F.3d 952 (11th Cir. 2018) ("*Sopo II*"). In *Sopo I*, the Eleventh Circuit applied the canon of constitutional avoidance to conclude that Section 1226(c) contains an implicit temporal limitation against unreasonably prolonged detention of criminal aliens without an individualized bond hearing. *Id.* at 1213-14. The Eleventh Circuit then adopted the "case-by-

---

[9] The Supreme Court did not reach the question of whether constitutional requirements, such as due process, impose temporal limitations or periodic bond hearings in cases of mandatory detention under Section 1226(c), because the Court of Appeals did not consider that question on the merits. *Jennings*, 583 U.S. at 312.

case" approach to determine whether the criminal alien's continued detention became unreasonable based on the factual circumstances of the case. *Id.* at 1215. Next, the Eleventh Circuit pointed to five non-exhaustive factors to determine the reasonableness of the detention, including: (1) the amount of time that the criminal alien has been detained without a bond hearing, (2) why the removal proceedings have become protracted, (3) whether it is possible to remove the criminal alien after the final order is issued, (4) whether the alien's immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable, and (5) whether the immigration detention facility is meaningfully different from a criminal penal institution. *Id.* at 1217-18 (citations omitted). The application of these factors was "straightforward" in *Sopo I*, as the petitioner had been detained for at least three-and-a-half years without a bond hearing. *Id.* at 1220. As a result, the Eleventh Circuit found the petitioner's detention was "unreasonable and, therefore, a violation of the Due Process Clause." *Id.* at 1221.

*Sopo I* was vacated by the Eleventh Circuit in *Sopo II*, because the petitioner was eventually removed from the United States while his case was still pending, rendering his appeal moot. *Sopo II*, 890 F.3d at 954. Moreover, the Supreme Court's subsequent decision in *Jennings* seemingly abrogated *Sopo I*, insofar as the Supreme Court rejected the application of the cannon of constitutional avoidance to Section 1226(c) since the statute was not susceptible to more than one plausible construction. *Jennings*, 583 U.S. at 296-97; *see also Hamilton v. Acosta*, No. 20-CIV-21318, 2020 WL 3036782, at *3 (S.D. Fla. May 8, 2020), *report and recommendation adopted*, No. 20-CIV-21318, 2020 WL 3035350 (S.D. Fla. June 4, 2020) ("Because *Jennings*, as already mentioned, concluded that the canon of constitutional avoidance was inapplicable to § 1226(c) detentions, *Sopo I* would have been abrogated had it not already been vacated on other grounds." (internal citations omitted)). Nevertheless, "district courts in this Circuit when confronted with

these challenges continue to look to *Sopo I*'s multi-factor analysis to determine whether prolonged detention under § 1226(c) does, in fact, violate an alien's right to procedural due process." *Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1330-31 (S.D. Fla. 2024) (collecting cases).

### iii.   Petitioner's Claims for Relief

Petitioner brings four claims in the Petition.  First, Petitioner alleges that his prolonged detention after previously receiving a bond in the immigration proceedings violates the INA (DE 1 ¶¶ 27-34).  Second, Petitioner argues that his prolonged detention violates his substantive and procedural due process rights under the Fifth Amendment (*id.* ¶¶ 35-45).  Lastly, Petitioner asserts a claim for attorney's fees and costs under the Equal Access to Justice Act (*id.* ¶¶ 46-47).

### a.   Violations of the INA

Petitioner argues that his continued detention is unlawful under the INA, because he previously received a $20,000 immigration bond on March 31, 2014 (*id.* ¶ 29).  Even though an immigration bond may be revoked, Petitioner contends that there is no evidence his $20,000 bond was revoked (*id.* ¶¶ 28, 30).  Additionally, Petitioner claims, without supporting documentation, that he lacks access to reasonably participate in his immigration court proceedings and is not afforded the right to examine the evidence against him, present his own evidence, or cross examine witnesses (*id.* ¶ 31).  Petitioner states that his "immigration proceedings continue to remain on the non-detained docket" and his next hearing is not scheduled until February 4, 2026 (*id.* ¶ 32).  Based on these arguments, Petitioner contends that his detention violates the INA (*id.* ¶ 34).

In their response to the Petition, Respondents provided a notice indicating Petitioner's $20,000 immigration bond was canceled on October 20, 2020 (DE 27-14; *see also* DE 27-2 ¶ 22).  Respondents also provided an order of the immigration judge showing that Petitioner's case was moved to Krome's detained docket on February 27, 2025 (DE 27-19).  Moreover, as part of his

Motion to Supplement the Record, Petitioner filed a transcript from an April 1, 2025 master hearing in the immigration proceedings, belying any claim that Petitioner would not receive a hearing until 2026 (DE 29-1).  That transcript also reflects that a second master hearing was set for April 21, 2025 (*id.* at 9-10).  Finally, Respondents state there have been no impediments to Petitioner's access to his attorney or ability to participate in his immigration proceedings (DE 27 at 2 n.2).  Respondents further state that ICE facilitated a legal call between Petitioner and his counsel on March 1, 2025 (*id.*).  Petitioner does not respond to these arguments in his reply or provide any contrary evidence.  As such, there is no basis in the record to conclude that Petitioner's detention violates the INA on these grounds.

For the first time in his reply, Petitioner argues that his "apprehension and continued detention is arbitrary and capricious because it departs from the agency's existing policies without providing a reasoned explanation for departing from these policies" and therefore, violates the Administrative Procedures Act ("APA") (DE 28 at 10).  But, Petitioner has not properly raised this argument or any legal claim arising under the APA, and Petitioner cites no legal authority applying the APA to an immigration judge's finding that detention is mandatory under Section 1226(c). Having presented this basis in a reply in the first instance, Petitioner waived any argument concerning the APA.  *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 (11th Cir. 2004) (explaining that a party waived an argument by presenting it for the first time in a reply); *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, No. 08-CIV-20738, 2009 WL 10664822, at *4 (S.D. Fla. Jan. 28, 2009) ("It is well settled that a party cannot raise an issue in its reply that was not made in its initial motion or brief.").  Nevertheless, even if the argument was properly preserved, it lacks merit.  The Supreme Court held, "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the

conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."
*Jennings*, 583 U.S. at 305-06.   Where the applicable statute mandates Petitioner's detention,
Petitioner has not convincingly argued that Respondents have acted in an arbitrary and capricious
manner, in violation of the APA.  *See Castaneda v. Garland*, 562 F. Supp. 3d 545, 560 (C.D. Cal.
2021) (explaining § 1226(c) is the "exception to the general rule" that aliens receive a bond hearing
and that rejection of a bond motion can be arbitrary and capricious under the APA).

### b.  Violations of Due Process

The Parties do not dispute that Petitioner is detained under Section 1226(c) for his prior
narcotics conviction and that his prior conviction subjects him to removal under Sections
237(a)(2)(A)(iii) and (a)(2)(B)(i) of the INA, 8 U.S.C. §§ 1227 (a)(2)(A)(iii) and (a)(2)(B)(i).[10]
The thrust of Petitioner's argument is that he has been participating in immigration proceedings
related to the charges in the Notice to Appear since 2013 (DE 28 at 7-8).  According to Petitioner,
when he was given an immigration bond in 2014, the immigration court considered whether he
presented a risk of absconding or a danger to the community and determined he did not (*id.* at 8).
In fact, Petitioner argues, "The government reviewed [Petitioner's] risk of failing to attend his
removal proceedings and whether he posed a danger to society three times by two different
agencies. In all three instances, [Petitioner] was found to not be at risk . . ." (*id.*).  Petitioner
subsequently complied with his bond conditions, and ICE stepped-down the level of monitoring
over Petitioner (*id.*).  Petitioner therefore claims that given his history of compliance, his detention

---

[10] Petitioner explains that his 2013 and 2025 Notices to Appear are identical, and both were issued
pursuant to his criminal conviction in California, not his conviction from the Southern District of
Florida (DE 28 at 6-7).

under Section 1226(c) is necessarily unlawful and violates his Due Process rights, because it does not fulfill the legitimate statutory purposes for detention (*id.* at 8-9).[11]

Respondents largely recount the cases discussed *infra* in arguing that Petitioner's detention pursuant to Section 1226(c) is lawful (*see generally* DE 27). Specifically, Respondents point to *Jennings* and *Demore* to argue that mandatory detention for the duration of the removal proceedings is constitutionally permissibly, and no implicit temporal limitations or rights to a bond hearing can be imputed to the statute (*id.* at 6-7). With respect to any as-applied constitutional challenge by Petitioner, Respondents argue that Petitioner has not yet been detained for six months, which is length of detention the Supreme Court considered and approved in *Demore* (*id.* at 8). Moreover, Respondents argue that their interests in detaining Petitioner to facilitate deportation or to protect against dangerousness and risk flight do not dissipate over time but rather, increase as removal proceedings progress towards their completion (*id.* at 10-11).

Here, there is no dispute that Petitioner has been detained since February 8, 2025, thirteen days since the filing of the Petition and approximately three months in total. Further, there is no dispute that Petitioner participated in a bond hearing on March 20, 2025. Both the length of Petitioner's detention and the fact that he had a bond hearing since being taken into custody, though he has no statutory right to one, counsel against the finding of a constitutional violation. *See Sopo I*, 825 F.3d at 1217 ("[T]here is little chance that a criminal alien's detention is unreasonable until at least the six-month mark." (citation omitted)); *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (explaining that a § 1226 detainee received "meaningful process" through a bond hearing); *Lopez v. Barr*, 458 F. Supp. 3d 171, 178 (W.D.N.Y. 2020) ("On

---

[11] Petitioner does not articulate any clear distinction between his claims brought for procedural and substantive due process violations under the Fifth Amendment in the Petition.

balance, the Court concludes that Lopez's bond hearing satisfied the 'fundamental requirement' of due process—namely, that he had 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))).

Indeed, in cases where the Court has granted habeas relief, usually by ordering a bond hearing not release, the length of custody frequently exceeded, or was likely to exceed, a year without a bond hearing.  *See, e.g.*, *Warsame v. Meade*, No. 20-CIV-22401, 2020 WL 13551825, at *4 (S.D. Fla. Aug. 18, 2020) (granting in-part a writ of habeas corpus as the petitioner was detained under Section 1226(c) for nearly a year without an individualized bond hearing); *Ripe*, 751 F. Supp. 3d at 1331 (same); *Rogers v. Ripa*, No. 21-CV-24433, 2022 WL 708493, at *5 (S.D. Fla. Jan. 22, 2022), *report and recommendation adopted*, No. 21-CV-24433, 2022 WL 574389 (S.D. Fla. Feb. 25, 2022) (same); *Garbius v. Dept. Homeland Sec.*, No. 24-CIV-22680, 2024 WL 5046042, at *3 (S.D. Fla. Sept. 10, 2024) (granting in-part a writ of habeas corpus as the petitioner received one bond hearing in three years of detention).

Petitioner's argument that his detention violates due process, because he was previously given a bond – so, his detention does not serve any legitimate statutory purpose – is also unpersuasive.  First, although Petitioner was previously given an immigration bond in 2014, Section 1226(b) unequivocally provides, "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. §1226(b).  "Thus, whether Petitioner was previously released on bond does not preclude revocation of his bond at a later date." *Tomlinson v. Swartz*, No. 24-CIV-24844, DE 9 at 6 n.4 (S.D. Fla. Jan. 31, 2025) (rejecting the argument that the petitioner was entitled to re-release on bond because he was previously granted a bond).

Even more, after Petitioner was released in 2014, he was convicted of a second narcotics offense, this time in federal court, and initially sentenced to 120 months' imprisonment, though his sentence was subsequently reduced. Although Petitioner's federal narcotics conviction is not referenced in the 2025 Notice to Appear, it is informative in considering whether Petitioner's detention violates due process. Concurring in *Demore*, Justice Kennedy viewed the due process question raised by mandatory detention under Section 1226(c) as an inquiry into when the detention becomes "unreasonable or unjustified:"

> [A] lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

538 U.S. at 532-33. As Respondents correctly point out, their interests in facilitating deportation of removable aliens have not dissipated, and Petitioner's 2016 federal narcotics conviction contravenes his argument that his prior bond forecloses any justification for his detention. *See Hamilton*, 2020 WL 3036782, at *6 (finding that the petitioner's admission to a violent crime showed he poses a risk of dangerousness, which weighed against his continued detention constituting a due process violation). Based on the record in this case, Petitioner has neither shown that there has been an unreasonable delay in his removal proceedings leading to his prolonged detention, nor that his mandatory detention is unjustified under Section 1226(c), in violation of the Due Process Clause.[12]

---

[12] To the extent Petitioner claims that he should be released based on his cooperation with law enforcement in narcotics investigations, that argument also fails. The statute makes clear that it is in the Attorney General's discretion to decide whether an alien should be released based on cooperation with law enforcement, so long as the alien is not a risk of flight or danger to the community. *See* 8 U.S.C § 1226(c)(4) ("The Attorney General may release an alien . . . *only if the*

Lastly, relying on *Sopo* I, Petitioner claims that "[a] proper individualized inquiry would support [Petitioner's] release" (DE 28 at 8).  As discussed above, even though *Sopo I* was vacated by *Sopo II* and its reasoning was abrogated by *Jennings*, many district courts find that its multi-factor analysis is instructive in assessing as-applied due process challenges to mandatory detention under Section 1226(c).  Nevertheless, in this case, to the extent that the *Sopo I* factors provide useful guidance, they do not support a determination that Petitioner's continued detention runs afoul of due process.  The first factor weighs against Petitioner, as he had a bond hearing approximately fifty days after his arrest.[13]   In addition, Petitioner has been detained for approximately three months, during which he has had at least one master hearing on April 1, 2025 and was scheduled to have another hearing on April 21, 2025.  The record does not show that his removal proceedings have become unreasonably protracted at this point.  Third, Petitioner does not claim it will be impossible to remove him after a final removal order.  The fourth factor also weighs against Petitioner, as he has spent less time in his current detention than the 226 days' imprisonment for his California conviction.  The only factor that favors Petitioner is the fifth and final factor, as he is currently detained in the same facility where criminal defendants are housed.  As a result, on balance, the *Sopo I* factors do not support Petitioner's request for relief.

---

*Attorney General decides . . .* that release of the alien from custody is necessary to provide protection to . . . a person cooperating with an investigation into major criminal activity . . . and the alien . . . will not pose a danger to the safety of other persons . . . and is likely to appear for any scheduled proceeding." (emphasis added)); *see also Lindsay v. Garland*, No. 23-CIV-74, 2024 WL 2967271, at *2 (S.D. Ga. Apr. 30, 2024), *report and recommendation adopted,* No. 23-CIV-74, 2024 WL 2959309 (S.D. Ga. June 12, 2024) ("In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute.").

[13] It is not clear in the record whether Petitioner appealed the denial of request for a bond before the immigration court.  However, Petitioner did reserve the right to appeal, which was due on April 21, 2025 (DE 27-24 at 2).

Though Petitioner's statutory and constitutional challenges to his detention fail on this record, the undersigned recognizes that Petitioner's protracted detention in the future could amount to a due process violation if there is an unreasonable delay in his removal proceedings. Accordingly, the undersigned respectfully recommends dismissal without prejudice of the Petition, which would permit Petitioner to raise an as-applied due process challenge in the future, should the circumstances so warrant. *See Hamilton*, 2020 WL 3036782, at *6 (dismissing the petition without prejudice, as "[i]t is conceivable that a protracted detention . . . could amount to a due process violation should there be "unreasonable delay" in his removal proceedings").

### c.  Recovery of Attorney's Fees and Costs

The Equal Access to Justice Act provides that "a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action."  28 U.S.C. § 2412(b) (2019).  Generally, a prevailing party is the party who receives some relief from a court.  *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) ("[A] 'prevailing party' is one who has been awarded some relief by the court.").  Here, Petitioner cannot be considered the prevailing party, because the undersigned respectfully recommends that the Petition be dismissed without prejudice.  Accordingly, Petitioner's claim for attorney's fees and costs should similarly be **DENIED**.

IV.   **CONCLUSION**

Based on the foregoing, it is respectfully recommended that Petitioner's Motion to Supplement the Record (DE 29) be **GRANTED** and that Petitioner's Verified Petition for a Writ of Habeas Corpus (DE 1) be **DISMISSED WITHOUT PREJUDICE** and this case be closed.[14]

V.   **OBJECTIONS**

The Parties will have fourteen (14) days from this Report and Recommendation to file written objections, if any, with the Honorable Melissa Damian, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 12th day of May, 2025.

ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:   All Counsel of Record

---

[14] "[I]n the event that a final order of removal issues during the period for objections to this Report, the Petition should be denied as moot."  *Hamilton*, 2020 WL 3036782, at *6.